SOUTH DAKOTA BOARD OF
REGENTS, Appellee,

v.

Inez MEISTER and Christine
Reiger, Appellants,

and

State of South Dakota, Intervenor
and Appellant.

Nos. 12841, 12842.

Supreme Court of South Dakota.

Argued March 14, 1980.

Decided Aug. 12, 1981.

David J. Figuli, Pierre, for appellee.

Charles Poches, Jr. Fort Pierre, for appellants.

David O. Carter, Asst. Atty. Gen., Pierre, for intervenor and appellant; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

HENDERSON, Justice.

The parties to this appeal are: South Dakota Board of Regents (appellee), Inez Meister and Christine Reiger (appellants), and the State of South Dakota (intervenor-appellant).

Appeal is taken from a judgment of the circuit court, Sixth Judicial Circuit, which vacated the decision of the State Personnel Policy Board (Personnel Board) upon the basis that (1) the decision of the Personnel Board was rendered in violation of the state constitution and in excess of its authority, and (2) SDCL 3–6A–12, 3–6A–37 and 3–6A–38 are unconstitutional. We reverse.

An appreciation of the procedural history is vital to an understanding of this appeal. Appellants were non-professional employees employed as houseparents by the School for the Visually Handicapped (School), which is a state institution under appellee's jurisdiction. Subsequent to being discharged, appellants filed a grievance requesting relief from the superintendent of the School, which relief was denied. Thereupon, appellants appealed to the Commissioner of Higher Education who is similarly under appellee's jurisdiction. Jurisdiction was then directly assumed by appellee and a hearing was conducted. Appellee denied appellants any relief. An appeal was then

taken by appellants to the Personnel Board which had enacted rules pursuant to SDCL 3–6A–12, which provides:

> The bureau of personnel shall, in the area of personnel management and under the direction and control of the commissioner of personnel, make rules and develop programs for and perform administrative functions of the following agencies:
>
> (1) Board of charities and corrections
>
> (2) Board of regents
>
> (3) Board of trustees of the South Dakota retirement system, and
>
> (4) All other state departments, divisions, boards and commissions of the executive branch.

Acting in accordance with SDCL 3–6A–37 and 3–6A–38, the Personnel Board assumed jurisdiction of the grievance. SDCL 3–6A–37 provides:

> The career service commission shall have the power and it shall be its duty to act as grievance review board for career service employees as set out in § 3–6A–38.

SDCL 3–6A–38 provides:

> If a grievance remains unresolved after exhaustion of a departmental grievance procedure an employee may demand a hearing before the career service commission as provided for in contested cases in chapter 1–26 and proceedings shall be held as provided therein. Any final action or decision shall be subject to appeal pursuant to chapter 1–26.

These three statutes are a part of SDCL ch. 3–6A, which is denominated as Career Service Personnel Management, a system existing within the executive branch of state government. SDCL 3–6A–1.

At this juncture, appellee protested the Personnel Board's assumption of jurisdiction over the persons and subject matter, claiming that SDCL 3–6A–12, 3–6A–37 and 3–6A–38 were unconstitutional and moved for dismissal. The Personnel Board denied this motion and issued judgment in favor of appellants. Appellee then appealed the decision of the Personnel Board to the circuit court. Through the Attorney General's office, the state motioned to intervene which motion was granted. In the circuit court, appellee maintained that the Personnel Board lacked jurisdiction since SDCL 3–6A–12, 3–6A–37 and 3–6A–38 were unconstitutional to the extent that these statutes purported to apply to appellee. The circuit court agreed, reasoning that the Legislature cannot infringe upon appellee's constitutional right of control over its employees. Thereupon, the circuit court vacated the Personnel Board's decision.

Appellee urged upon the circuit court that it has exclusive control over the School for the Visually Handicapped and its employees as per art. XIV, § 3 of the Constitution of the State of South Dakota and SDCL 13–49–14. Those provisions read as follows:

> [Art. XIV, § 3] The state university, the agricultural college, the school of mines and technology, the normal schools, a school for the deaf, a school for the blind, and all other educational institutions that may be sustained either wholly or in part by the state shall be under the control of a board of five members appointed by the Governor and confirmed by the senate under such rules and restrictions as the Legislature shall provide. The Legislature may increase the number of members to nine.
>
> [SDCL 13–49–14] The board of regents is authorized to employ and dismiss all officers, instructors, and employees of such institutions, necessary to the proper management thereof, to determine their number, qualifications, and duties, fix the term of their employment, and rate and manner of their compensation, provide for a sabbatical leave on part pay, and provide for a retirement program; provided, that no person shall be employed or dismissed by reason of any sectarian or political opinions held.

Appellants and intervenor contend that the circuit court erred in not applying art. IV, § 8 of the State Constitution (1972 amendment granting the executive depart-

ment the right to reorganize state government).[1]

The crux of the dispute between the parties is the constitutional placement of appellee within our system of state government. Appellants and intervenor contend that the authority of appellee stems from the executive branch of government; hence, by being within the executive sphere of power, appellee is constitutionally subject to SDCL 3–6A–12, SDCL 3–6A–37 and SDCL 3–6A–38. We agree with this contention.

The aforementioned statutes are part of an executive reorganization which specifically includes appellee within the personnel management functions which were transferred to the bureau of personnel provided for in SDCL 3–6A–12.[2] This reorganization was pursuant to the power granted the Governor and Legislature in art. IV, § 8 of the South Dakota Constitution.[3]

Appellee relies upon art. XIV, § 3 of the South Dakota Constitution for its position that the Board of Regents is a separate and distinct constitutional entity. This provision, however, is self-qualifying (emphasis added):

> The state university, the agriculture college, the school of mines and technology, the normal schools, a school for the deaf, a school for the blind, and all other educational institutions that may be sustained either wholly or in part by the state shall be under the control of a board of five members appointed by the Governor and confirmed by the senate *under such rules and restrictions as the Legislature shall provide.* The Legislature may increase the number of members to nine.

As we expressed in *Board of Regents v. Carter,* 89 S.D. 40, 46, 228 N.W.2d 621, 625 (1975), art. XIV, § 3 is not to be interpreted as establishing "the Regents as a fourth branch of government independent of any legislative policies. This, we believe, [was] the intent of the people when they delegated their power to the Regents through Art. XIV, § 3."

*Carlson v. Hudson,* 277 N.W.2d 715 (S.D. 1979), is also relied upon by appellee; *Carlson,* however, is inapposite. In that case, the facts were materially different from the case at hand. Appellant Carlson was employed as a professional teacher; in the instant case, appellants were non-professional employees. This distinction is critical in view of SDCL 3–6A–13(5),[4] which gives the Personnel Board jurisdiction over appellee's *non-professional* employees. More-

---

1. We have previously held that this executive-mandated reorganization was a lawful exercise of the Governor's authority. *In re Opinion of the Justices,* 87 S.D. 114, 203 N.W.2d 526 (1973).

2. *See* SDCL 3–6A–13(5), SDCL 3–6A–14 and SDCL 1–45–16.

3. Art. IV, § 8 provides:
    All executive and administrative offices, boards, agencies, commissions and instrumentalities of the state government and their respective functions, powers and duties, except for the office of Governor, lieutenant governor, attorney general, secretary of state, auditor, treasurer, and commissioner of school and public lands, shall be allocated by law among and within not more than twenty-five principal departments, organized as far as practicable according to major purposes, by no later than July 1, 1974. Subsequently, all new powers or functions shall be assigned to administrative offices, agencies and instrumentalities in such manner as will tend to provide an orderly arrangement in the administrative organization of state government. Temporary commissions

may be established by law and need not be allocated within a principal department.
    Except as to elected constitutional officers, the Governor may make such changes in the organization of offices, boards, commissions, agencies and instrumentalities, and in allocation of their functions, powers and duties, as he considers necessary for efficient administration. If such changes affect existing law, they shall be set forth in executive orders, which shall be submitted to the Legislature within five legislative days after it convenes, and shall become effective, and shall have the force of law, within ninety days after submission, unless disapproved by a resolution concurred in by a majority of all the members of either house.

4. SDCL 3–6A–13(5) provides:
    Presidents, deans, administrative and policy-making positions, student health service physicians, teaching and professional research positions under the jurisdiction of the state board of regents and other directors or administrative policy-making positions of such institutions as determined by the career service commission[.]

over, *Carlson* entailed no discussion on the issues of executive reorganization and Personnel Board authority, as does the case presently before the bar.

Although, as previously shown, there appears to be no inconsistency between art. IV, § 8 and art. XIV, § 3 of the South Dakota Constitution, any perceived or actual inconsistency would require us to view art. IV, § 8 as controlling, due to its more recent enactment.[5] *Kneip v. Herseth*, 87 S.D. 642, 214 N.W.2d 93 (1974).

This Court has recently held that "[e]nactments of the legislature should be upheld unless they are clearly and unmistakably unconstitutional." *People in Interest of T.L.J.*, 303 N.W.2d 800, 808 (S.D. 1981); *see also In Re Hinesley*, 82 S.D. 552, 150 N.W.2d 834 (1967). As indicated by the aforementioned constitutional provisions, statutes, and case law, appellee is part of the executive branch of government and receives its authority therefrom. Accordingly, we hold that SDCL 3–6A–12, SDCL 3–6A–37 and SDCL 3–6A–38 are constitutional as applied to appellee and, as such, the Personnel Board had jurisdiction to hear appellants' grievance.

The judgment of the circuit court is reversed and the judgment of the Personnel Board is reinstated.

DUNN, MORGAN and FOSHEIM, JJ., concur.

WOLLMAN, C.J., dissents.

WOLLMAN, Chief Justice (dissenting).

Because I adhere to the views set forth in my dissenting opinion in *Board of Regents v. Carter*, 89 S.D. 40, 56, 228 N.W.2d 621, 629 (1975), I must dissent. Indeed, the majority opinion goes well beyond what the plurality opinion in *Carter* held, for there Justice Doyle quite carefully pointed out:

> The ability of the Regents to unilaterally set salaries, discharge employees, or establish employment qualifications is left intact. The board's basic right of control is left untouched, and SDCL 3–18 is, therefore, a permissible restriction on the exercise of that control.

89 S.D. at 52, 228 N.W.2d at 628.

Although we did not cite *Carter* in our opinion in *Carlson v. Hudson*, 277 N.W.2d 715 (1979), our holding therein was in essence a reaffirmation of the principles set forth in *Carter.*

Implicit in the majority opinion is the assumption that art. IV, § 8 of the State Constitution constitutes a limitation on the constitutional authority vested in the Board of Regents by art. XIV, § 3 of the constitution. I find no support in the language, logic, or legislative history of art. IV, § 8 for this assumption.

Moreover, even if art. IV, § 8 were construed to constitute an implied amendment of art. XIV, § 3, it can hardly be said that SDCL 3–6A–12, 3–6A–37 and 3–6A–38 were enacted pursuant to any authority granted to the legislature by art. IV, § 8.

I would hold that the statutes in issue here cannot constitutionally be made applicable to the Board of Regents. Accordingly, I would affirm the judgment.

**5.** Art. IV, § 8 was enacted in 1972 as per 1972 S.D. Sess. L. ch. 1; art. XIV, § 3 was enacted in 1895 as per S.D. Sess.L. ch. 36.